UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUSAN PEARCE,

        Plaintiff(s),

  v.

MICHAEL ASTRUE,

        Defendant(s).

NO. C09-04MJP

ORDER RE: REPORT and RECOMMENDATION

The above-entitled Court, having received and reviewed

1. Report and Recommendation (Dkt. No. 13)

2. Objections to Report and Recommendation (Dkt. No. 14)

all attached declarations and exhibits and the administrative record filed in the above-entitled matter, the Court declines to adopt the Magistrate Judge's Report and Recommendation and instead makes the following ruling:

IT IS ORDERED that the matter be REMANDED to the Administrative Law Judge for a determination of Plaintiff's SSI benefits.

**Background**

In May 2003, Plaintiff applied for SSI disability benefits, claiming disability since November 2, 2001. Following denial of her application and refusal to reconsider, she requested and received a de novo hearing from an administrative law judge ("ALJ") – the ALJ determined that she was not disabled under Step 5 of the five-step evaluation process. The Appeals Council denied her request for a review of that decision and she instituted a civil action for judicial review in July 2006 (C06-1091-JCC-MAT).

**ORD ON OBJNS
TO RPT & REC - 1**

Upon judicial review, Magistrate Judge Theiler recommended reversal of the Commissioner's decision and remand for rehearing. Significant to Judge Theiler's analysis was her assessment that the original ALJ finding regarding Plaintiff's residual functional capacity ("RFC") was deficient in the following regard: while the ALJ found that Plaintiff required a "sit/stand option" in her work environment (i.e., the job must provide a mixture of sitting and standing), the ALJ did not specify the *frequency* of Plaintiff's need to alternate sitting and standing, which the Social Security regulations require ("The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing;" SSR 96-9p).[1] C06-1091, Dkt. No. 18, p. 16. Judge Theiler's recommendation was unopposed and District Judge Coughenour adopted it. On June 4, 2007, the Appeals Council remanded Plaintiff's claim to an ALJ for rehearing.

The rehearing occurred on August 1, 2007. On September 27, 2007, the ALJ issued his determination that Plaintiff was not disabled at Step 4 or, alternatively, at Step 5. The ALJ findings on rehearing can be summarized as follows:

- Step One: The ALJ found that Plaintiff had not engaged in substantial gainful activity since November 2, 2001. (Tr. 581; Finding 2).
- Step Two: The ALJ found that Plaintiff's multiple sclerosis ("MS") and obesity (5'7", 250 pounds) were severe impairments. (Tr. 581; Finding 3).
- Step Three: The ALJ found that Plaintiff's impairment or combination of impairments did not meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.; Finding 4).
- Before proceeding to Step 4, the ALJ found that Plaintiff had the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently and to sit 6 hours in an 8-hour

---

[1] Of further significance was the fact that it appeared from the questions posed by the ALJ at the administrative hearing that the ALJ *intended* that the "sit/stand option" be "at will" – the ALJ was directed upon remand to clarify whether this further qualification of the option was in fact intended. C06-1091, Dkt. No. 18, p. 16.

|   |   |
|---|---|
| 1 | workday and stand or walk 4 hours in an 8-hour workday, "with a sit/stand option." |
| 2 | (Id.; Finding 5). |

- Step Four: The ALJ found that Plaintiff was capable of performing past relevant work as a telemarketer. (Tr. 524; Finding 6).

- Step Five: The ALJ found, alternatively, that Plaintiff was capable of vocationally adjusting to work that exists in significant numbers in the regional or national economy, considering her age, education, work experience and RFC; specifically, as a call-out telephone operator or a laundry folder. The findings included the ALJ's conclusion that both these jobs had "at will" sit/stand options. (Tr. 525; Finding 10).

- Based on these findings, the ALJ ruled that Plaintiff was not under a disability from November 2, 2001 through December 31, 2003. (Tr. 525; Finding 11).

That ruling became the Commissioner's "final decision" on November 7, 2007, when the Appeals Council declined to assume jurisdiction over Plaintiff's claim. At that point, Plaintiff instituted the instant civil action, seeking judicial review of the administrative determination for a second time.

**Magistrate Judge's Recommendation**

In its analysis of Plaintiff's appeal from the decision of the ALJ, the Magistrate Judge's Report and Recommendation ("R&R") contained a number of findings which are summarized below:

The Magistrate Judge found that the ALJ's September 2007 decision was the final decision of the Commission and thus subject to review by this Court.

Plaintiff had presented the testimony of a Dr. Lellelid that, in Lellid's opinion, Plaintiff was unable to sustain full-time work. The ALJ rejected the conclusions of Dr. Lellelid, a physician who saw and treated Plaintiff for a period which spanned 1999 to 2006 but that did not include the period for which she seeks disability benefits. Primarily because of that gap in treatment, the ALJ did not accord Dr. Lellelid's opinions the weight to which the conclusions of a "treating physician" are entitled. The

R&R disagrees with the ALJ on this point, concluding instead that "Dr. Lellelid was clearly a treating physician as of at least July 2004." R&R, p. 8. However, the Magistrate Judge ultimately found that the error was "harmless" because "[t]he ALJ gave clear and convincing and specific and legitimate reasons, supported by substantial evidence, for giving Dr. Lellelid's opinion little weight." Id., p. 12.

The R&R reflects a unanimous opinion by all parties that the ALJ's finding at Step 4 of the sequential evaluation process (*see* 20 C.F.R. §§ 404.1520, 416.920) – that Plaintiff could perform past relevant work as a telemarketer – was erroneous. R&R, p. 13. The Magistrate Judge, however, ultimately finds that error to be harmless as well based on a finding that the Step 5 analysis was proper.

At the rehearing on Plaintiff's application for benefits, the ALJ relied (as he was entitled to do) on the testimony of a vocational expert concerning the job classifications for which Plaintiff might be suitable. However, under Social Security regulations (SSR 00-4p), an ALJ is affirmatively responsible for ascertaining whether a vocational expert's testimony is consistent with the Dictionary of Occupational Titles ("DOT"), a job information resource published by the Department of Labor. If the expert's testimony is inconsistent, the ALJ is obligated to determine the reasonableness of the expert's explanation for the conflict.

The vocational expert at Plaintiff's rehearing testified that "a person of [P]laintiff's age, education, work experience, and residual functional capacity would be able to work as a laundry folder. . . or a call-out operator. . ." R&R, p. 14; Tr. 623-24, 626. In response to the ALJ's inquiry, the vocational expert asserted that her testimony was consistent with the DOT (Tr. 629-30) and the ALJ relied on her testimony (and its consistency with the DOT) in his findings. Tr. 525.

The Magistrate Judge, however, agrees with Plaintiff's contention that the expert's testimony was <u>not</u> in accord with the DOT. The "light work" entailed in the laundry folder position requires the ability to stand or walk for six hours in an eight-hour work day with intermittent sitting during the remaining time (R&R p. 15; SSR 83-10), a requirement inconsistent with the ability to stand for only

**ORD ON OBJNS
TO RPT & REC - 4**

four hours and a sit/stand option. Furthermore, the "sedentary work" requirement (for a call-out operator position) to stand or walk for two hours and sit for six hours is likewise inconsistent with a sit/stand option. The Magistrate Judge finds that, in failing to ascertain this inconsistency, "the ALJ failed to properly follow the procedures of SSR 00-4p." R&R, p. 15.

Once again, though, the R&R resolves the conflict by finding the error "harmless." The Magistrate Judge concludes that, in asking the vocational expert how the sit/stand option affected each job, the ALJ received "explanations [which] provided sufficient support for her conclusions so as to justify the contradiction." Id., p. 16. Relying on these explanations, the R&R states, rendered the failure to follow the procedures of SSR 00-4p harmless.

The R&R reports a discrepancy between the job statistics offered at the two ALJ hearings concerning the number of call-out operators in the local and national economies. At the first hearing, the vocational expert testified that there were at least 50 call-out operators in the state of Washington and 1,500 nationally. Tr. 336. At the second ALJ hearing two years later, another vocational expert testified that there were 1,062 call-out operators in Washington State and 79,726 in the national economy. Plaintiff cites error in the ALJ's failure to explore the twenty-fold increase which had allegedly occurred in the number of call-out operator jobs in two years. Because Plaintiff concedes that the number of laundry folder jobs identified by the second vocational expert (4,258) constitutes a significant number of jobs, however, the Magistrate Judge does not find harmful error in the failure to resolve the conflict in testimony. R&R p. 16.

**Discussion/Analysis**

Before beginning an analysis of the R&R and Plaintiff's arguments, it is useful to review the definition of "harmless error" in the context of appeals from unfavorable Social Security disability determinations. The Ninth Circuit standard permits a finding that an ALJ's error is harmless only where it was "inconsequential to the ultimate nondisability determination" and if the reviewing court "can confidently conclude that no reasonable ALJ, when [not making the error] could have reached a different disability determination." Stout v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006).

The Court reviews Plaintiff's objections to the Magistrate Judge's recommendation in order, and makes its findings at the conclusion of each:

1. *Whether the Court reviews the ALJ's September 2007 decision as the Commissioner's final decision*

All parties are in agreement that the September 2007 decision is the "final decision" and it is ripe for review.

FINDING: **ADOPTED**

2. *Whether the ALJ erred in finding that Plaintiff could perform her past work as a telemarketer*

Again, the Magistrate and Plaintiff are in agreement that there is not substantial evidence to support the ALJ's Step 4 decision that Plaintiff could perform past relevant work as a telemarketer ("[Plaintiff's] work as a telemarketer was not substantial gainful activity and she did not work as a telemarketer long enough to learn how to do the job;" R&R, p. 13). The R&R goes on to find this to be "harmless error" because of the Magistrate Judge's conclusion that the ALJ's Step 5 analysis (that there was other work which Plaintiff was capable of performing) was proper. That conclusion will be analyzed *infra*.

FINDING: **ADOPTED** (re: no substantial evidence that telemarketing was a "substantial gainful activity" for Plaintiff)

3. *Whether the ALJ erred in relying on the testimony of the vocational expert which departed from the Dictionary of Occupational Titles*

There is no disagreement that the vocational expert's testimony was at odds with the DOT and it was error for the ALJ to find that the two were consistent.

But the Magistrate Judge found the error to be "harmless" on the grounds that the vocational expert "provided reasonable explanations for the contradiction between her testimony and the DOT; namely, that she explained how each job could be performed with a sit/stand option" and that she "provided an explanation for the conflict between the six-hour standing requirement for light work and plaintiff's capacity to stand or walk for four hours." R&R, p. 16. As a preliminary matter, it is noted that the Magistrate Judge does not elaborate on what the "reasonable explanation for the contradiction" is. The Court has reviewed the vocational expert's testimony and failed to find the contradiction explained. The vocational expert merely testified, in contradiction to the requirements noted in the DOT, that there could be a "sit/stand" option for the jobs she believed Plaintiff qualified to perform – her testimony that sit/stand options existed for the "light" and "sedentary" work she prescribed does not square with the DOT requirements which provide to the contrary. Indeed, since the vocational expert apparently believed that her testimony did not contradict the DOT, it is difficult to imagine how or why she would have resolved any contradiction.

More significantly, however, this is not "harmless error" by the Ninth Circuit test. First, as noted *supra*, it is not logical to conclude that an expert provided a "reasonable explanation" for a contradiction which the expert did not believe existed. And it is not consistent with the record before the Court to assume that the ALJ reasoned in that fashion (i.e., that the expert had laid to rest any apparent discrepancy); in fact, the ALJ explicitly relied on the vocational expert's testimony on the

**ORD ON OBJNS
TO RPT & REC - 7**

grounds that it was consistent with the DOT, not that it "reasonably explained" away any inconsistency with the DOT.

Second, the Social Security regulations require that the ALJ "explain in the determination or decision how he or she resolved the conflict [between the expert's testimony and the DOT]." SSR 00-4p. Believing the vocational expert's testimony to be in conformity with the DOT, the ALJ provided no such explanation, and the Magistrate Judge cites no authority to resolve that conflict *sua sponte*.

Finally, the Court reiterates the Stout standard for determining whether an ALJ error is harmless: an ALJ's error is harmless only if it is found to be "inconsequential to the ultimate nondisability determination" and if the court "can confidently conclude that no reasonable ALJ, when [not making the same error] could have reached a different disability determination." Id. at 1055-56. This Court is not prepared to say with certainty that another ALJ, upon learning that a vocational expert mistakenly believed her testimony to be consistent with the DOT, would not have found that testimony to be unreliable and thus reached a different determination.

FINDING: **NOT ADOPTED**

4.  *Whether the ALJ erred in finding that there were 1,062 call-out operators in Washington*

At the first ALJ hearing (August 2005), the vocational expert testified to the existence of 50 call-out operator positions in the state of Washington and 1,500 in the nation; at the second ALJ hearing (August 2007), a second vocational expert testified that there were 1,062 call-out operators in Washington State and 79,726 in the U.S.. Error is claimed in the failure to rectify the enormous increase in those positions in such a short period of time. Plaintiff claims in her objections that the Magistrate Judge "correctly recommended that the Court not affirm, even in part, based on call-out operator jobs." Obj'ns, p. 6.

This "over-reads" the Magistrate Judge's language in the R&R. The gist of the R&R rationale in this section is that the error, if any, is harmless. But because the R&R goes on to endorse the part of

the ALJ's finding regarding laundry folder jobs (and to find that Plaintiff concedes that the 4,258 laundry folder jobs identified at Step 5 "constitute a significant number of jobs;" R&R, p. 16), the Magistrate Judge never really reaches the issue of whether the discrepancy concerning the call-out operator figures actually constitutes a harmful error.

The Court finds that it was error for the ALJ to accept without question the figures provided by the second vocational expert for the number of call-out operator jobs in 2007 locally and nationally. A twenty-fold increase in two years simply strains credulity and cries out for an explanation. The failure to seek such an explanation, which in this instance (1) lead the ALJ to a conclusion that the unexamined figure constituted a significant number of jobs and (2) thus on to the adverse finding at Step 5, is not harmless error. Nor is the error rectified by the ALJ's finding regarding laundry folder jobs since that finding was based on the vocational expert opinion which the ALJ erroneously believed comported with the DOT.

FINDING: **NOT ADOPTED**

5. *Whether there is substantial evidence to support the ALJ's findings at Step 5 with regard to Plaintiff's need for an "at-will sit/stand option"*

This matter was remanded to the ALJ for a second hearing primarily because of the ambiguity surrounding the nature of the "sit/stand" option which Plaintiff requires. While Magistrate Judge Theiler (in the 2006 proceeding) read the ALJ's questions and findings in the first hearing as reflecting an *intention* that Plaintiff have an at-will sit/stand option, the findings at that time were sufficiently vague that the ALJ was directed to "clarify his meaning as to a sit/stand option both within his RFC assessment and any hypotheticals to a [vocational expert]." Tr. 545.

It cannot be said that the ALJ took this admonition to heart. In his questions to the vocational expert regarding *both* the call-out operator and laundry folder positions, the ALJ merely posed the question "And how does the sit/stand option impact (or 'affect') that job?" Tr. 623-24.

Unsurprisingly, the vocational expert's responses were correspondingly vague – at no point does she specifically identify either position as having an "at-will" sit/stand option nor does she specify for what periods of time it would be appropriate to do either. This is clearly not what Magistrate Judge Theiler or Judge Coughenour had in mind when the matter was referred back to the ALJ.

The ALJ's second set of findings is likewise violative of the Court's directives upon remand. Despite an order to "clarify his meaning as to a sit/stand option. . . within his RFC assessment," the ALJ merely observes (at Finding 5) "I find that the claimant had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit for 6 hours in an 8-hour workday and to sit and/or walk for 4 hours in an 8-hour workday, *with a sit-stand option*." Tr. 518 (emphasis supplied). This is the identical level of ambiguity which the remand was intended to correct.

The Magistrate Judge again relegates this to the status of "harmless" error because it can be seen in the ALJ's findings that he concludes from the testimony of the vocational expert that both the call-out operator and the laundry folder positions provide at-will sit/stand options. Tr., p. 525. The Court cannot agree. Because of the lackadaisical framing of the "sit/stand option" questions and the vague responses of the vocational expert, the ALJ had no evidence upon which to base his findings that either job provided an *at-will* sit/stand option.

This is not "inconsequential to the ultimate nondisability determination" – it is, rather, at the heart of the ALJ's finding of nondisability and the fact that there was no evidence on the record to support it makes it an erroneous finding.

FINIDNG: **NOT ADOPTED**

6. <u>Whether the ALJ erred in evaluating the opinions of treating neurologist Dr. Lellelid</u>

Plaintiff objects to the ALJ's findings regarding Dr. Lellelid, a neurologist who saw Plaintiff from 1999 - 2006 (but did not actually see or treat her during the period for which the disability is sought). Her objections are three-fold: (a) that the ALJ erred in failing to accord Dr. Lellelid "treating

physician" status[2]; (b) that the ALJ erred in rejecting Dr. Lellelid's "retrospective" opinions (i.e., opinions about the nature of Plaintiff's past conditions based on a present-day analysis); and (3) that the ALJ "misconstrued" Lellelid's opinion.

The R&R agrees with Plaintiff that Dr. Lellelid's opinions regarding Plaintiff during the period at issue deserved to be evaluated as those of a "treating physician" – on that basis, they would be entitled to greater weight than a non-treating physician (e.g., a physician who examined her solely for the purpose of offering an opinion for the SS disability hearing or who simply reviewed her records before offering an opinion). If a treating physician's opinion is uncontradicted, the ALJ may only reject it for "clear and convincing reasons." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ must provide "specific and legitimate reasons," supported by substantial evidence, for disregarding a treating physician's evaluation. Id. at 830-31.

Furthermore, the R&R cites case authority for the rule that physician's reports about a claimant's condition, even after the insured period has lapsed, are still relevant to an assessment of the claimant's disability. Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988). However, the Magistrate Judge again finds that the ALJ's error in this regard is harmless because the ALJ articulated additional reasons for discounting Dr. Lellelid's opinion; reasons which the Magistrate Judge finds sufficiently "clear and convincing" to support a rejection of a treating physician's opinion.

The Court cannot agree with the R&R's assessment of the ALJ's error in failing to characterize Dr. Lellelid as Plaintiff's "treating physician," primarily for the reason that the Magistrate Judge failed to analyze the error on the basis of the Ninth Circuit's Stout test. The error is not "inconsequential to the ultimate nondisability determination," and it is the finding of this Court that it would have been

---

[2] The ALJ found that Dr. Lellelid was "currently" Plaintiff's treating physician, and had been since she began seeing Plaintiff regularly in 2004. But the ALJ refused to accord Lellelid's "retrospective" opinions of Plaintiff's condition during the period in question the weight of "treating physician" analysis because Dr. Lellelid provided Plaintiff no treatment during that period.

**ORD ON OBJNS**
**TO RPT & REC - 11**

entirely reasonable for another ALJ who had recognized Dr. Lellelid's "treating physician" status and accorded her testimony the commensurate weight to have come to a different disability determination; therefore this is not harmless error.

The Magistrate Judge's recommendation was based on the fact that, despite the error concerning the medical expert's "treating physician" status, the ALJ had articulated sufficient reasons for refusing to accept the doctor's opinion; among them, that the opinion was "after the fact" (i.e., formed outside the period for which Plaintiff was seeking disability benefits). The ALJ's dismissal of Dr. Lellelid's conclusions regarding Plaintiff's condition and the likelihood of her being employable on the basis that those opinions were "retrospective" does not find support in Ninth Circuit law. "It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." Smith v. Bowen, 840 F.2d 1222, 1225 (9th Cir. 1988). Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating. . . physician, we credit that opinion "as a matter of law." Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989).

FINDING: **NOT ADOPTED**

7.  *Whether Plaintiff should be awarded the relief which she seeks*

It has been nearly six years since Plaintiff began her quest for disability benefits. This is her second civil action; on both occasions she has been upheld in her contention that she did not receive the full measure of administrative rights and evidentiary consideration to which she is entitled. In her administrative process, she has twice reached Step 5 at which the Commissioner has the burden of production. It is the finding of this Court that the errors below render it impossible to conclude that the Commissioner has carried that burden successfully.

> . . . The [district] court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing . . .

42 U.S.C. § 4056(g).

This Court has the authority to hold that Plaintiff was clearly disabled during the period for which she seeks benefits. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Were the Court to remand for rehearing, it would merely be to order the ALJ (again) to comply with the Court's order and review the evidence in accordance with the established procedures and standards, a requirement which has twice been ignored.

The Court finds (in accordance with the standards established in Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000)), that (1) the ALJ failed to provide legally sufficient reasons for rejecting (and in some cases – e.g., the number of call-out operator jobs – accepting) the evidence which he did; (2) there are no outstanding issues to be resolved before a determination of disability can be made and (3) a complete review of this record, conducted through the lens of the presumptions and evidentiary analysis to which Plaintiff is entitled, suffices to establish that an ALJ would be required to accord Plaintiff her disability status if the evidence were properly credited. As is this Court's right, the matter is remanded for an immediate award of benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

**Conclusion**

The Court adopts portions of the Magistrate Judge's Report, but not the final recommendation. The Court finds error in (1) the ALJ's findings that Plaintiff could perform her past work as a telemarketer; (2) the ALJ's reliance on the testimony of the vocational expert despite discrepancies between the expert's opinion and the Dictionary of Occupational Titles (and the ALJ's failure to resolve that discrepancy); (3) the ALJ's failure to inquire into the twenty-fold increase in call-out operator jobs between Plaintiff's first hearing in 2005 and her second hearing in 2007; (4) the ALJ's findings in regard to an "at-will" sit/stand option in Plaintiff's residual functional capacity and his failure to comply with the mandate upon remand to be more specific regarding the sit/stand option in both his questioning of the vocational expert and in his RFC finding; and (5) in the ALJ's failure to accord Dr.

Lellelid "treating physician" status throughout her relationship with Plaintiff, and his failure to accord any weight to Dr. Lellelid's "retrospective" opinions regarding Plaintiff's inability to sustain full-time employment during the period at issue in this litigation. The Court further finds, in accordance with the Ninth Circuit standard, that this was not harmless error.

The Court finds sufficient evidence in the record to award Plaintiff disability status for the requested period, and remands the matter to the ALJ for the determination of Plaintiff's benefits.

The clerk is ordered to provide copies of this order to all counsel.

Dated: November _3__, 2009

Marsha J. Pechman
U.S. District Judge

**ORD ON OBJNS TO RPT & REC - 14**